**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DAMON J. WARE, ) | |
| ) | CASE NO. 5:13-cv-00991 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Damon Ware ("Ware") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On April 15, 2009, Ware filed an application for SSI alleging a disability onset date of

September 14, 1998.[1] His application was denied both initially and upon reconsideration. Ware timely requested an administrative hearing. (Tr. 14.)

On May 3, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Ware, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 14.) On October 18, 2011, the ALJ found Ware was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 22-23.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age twenty-one (21) at the time of his administrative hearing, Ware is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963(c). Ware has a limited education and no past relevant work. (Tr. 22.)

## III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

---

[1] The alleged onset date was amended to April 15, 2009. (Tr. 14.)

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

The ALJ found Ware established medically determinable, severe impairments, due to borderline intellectual functioning and depression; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16.) Ware was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels with some non-exertional limitations. (Tr. 18.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Ware was not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence

in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Listing 12.05(C)*

In his first assignment of error, Ware argues that the ALJ erred by finding that he did not meet or equal Listing 12.05(C). (ECF No. 16 at 10-12.)

At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy **all** of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states, in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.

5

\*\*\*

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

*Id.*[2] Under each mental retardation listing, including Listing 12.05(C), a claimant must establish that his impairment: (1) satisfies the "diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added). If a claimant does not show that his impairment satisfies the diagnostic description for mental retardation, he cannot be found disabled. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *accord Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012); *Green v. Astrue*, 2012 U.S. Dist. LEXIS 92685 at \*8 (S.D. Ohio July 5, 2012). "Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22." *Cox v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 143719 (E.D. Tenn. Sept. 7, 2012) (*citing Foster*, 279 F.3d at 354.)

### 1. Subavarage General Intellectual Functioning with Deficits in Adaptive Functioning Manifested Before Age 22

To satisfy Listing 12.05(C), a claimant must demonstrate: (1) valid verbal, performance, or full scale IQ of 60 through 70; (2) evidence of deficits in adaptive functioning initially manifested before age 22; *and*, (3) an additional and significant work-related limitation of function. *See, e.g., Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).

The Commissioner asserts that the ALJ's decision should be affirmed, because Ware has

---

[2] Since the time of the ALJ's decision, the term "mental retardation" has been replaced with "intellectual disability." This Court will continue to use the terminology in effect at the time of the decision for the sake of consistency. Notably, the underlying requirements of the listings have not changed.

not demonstrated the requisite deficits in adaptive functioning. (ECF No. 17 at 13-14.) However, the ALJ's Step Three analysis simply did *not* address whether the evidence provided by Ware was sufficient to satisfy the requirement of deficits in adaptive functioning initially manifested before age 22. Though the Commissioner's argument – that there is evidence demonstrating that Ware did not satisfy the threshold requirement of Listing 12.05(C) – is not entirely unpersuasive, counsel's argument cannot be substituted for the reasons actually offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument). As explained in another case from within this district with largely similar facts, "to complete the analysis that the Commissioner is suggesting [concerning deficits prior to age 22] at this time – to apply the facts of this case to Listing 12.05(C) for the *first time* and conclude that it does not apply [–] would be a *de novo* review. As such, this Court is constrained from considering the argument." *Fury v. Comm'r of Soc. Sec.*, 5:11-cv-1660, 2012 WL 4475661 at *3 (N.D. Ohio Sept. 26, 2012) (emphasis in original).

### 2. Physical or Other Mental Impairment Imposing Significant Limitation(s)

The ALJ did not expressly address whether Ware has a physical or other mental

impairment imposing an *additional* and significant work-related limitation of function as required by Listing 12.05(C). The question is what constitutes "an additional and significant work-related limitation of function?" The regulations state as follows:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A.

Here, the ALJ found that Ware's severe impairments included borderline intellectual functioning and depression. (Tr. 16.) Thus, the ALJ implicitly acknowledged that Ware suffered one additional mental impairment, but it is unclear whether Ware's depression resulted in "an additional and significant work-related limitation of function." Since the ALJ's explanation for finding that Ware did not meet or equal Listing 12.05(C) did not involve this criteria, the Court declines to render a *de novo* determination.

### 3. Valid Qualifying IQ Score

Because the ALJ did not base his decision on either: (1) the lack of evidence concerning significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested before age 22; or (2) the lack of an additional physical or other mental impairment imposing an additional and significant work-related limitation of function, the decision necessarily turned upon the ALJ discrediting Ware's IQ scores.

Ware argues that there were valid IQ scores capable of meeting Listing 12.05(C). (ECF No. 16.) The record contains the following IQ test results:

8

- On February 20, 2001, Wechsler Intelligence Scale for Children-III (WISC-III), Verbal: 78, Performance: 59, Full Scale: 66.  (Tr. 181, Exh. 14E.)

- On March 22, 2005, Wechsler Abbreviated Scale of Intelligence: Verbal: 76, Performance: 68, Full Scale: 70.  *Id*.

- On March 5, 2007, Wechsler Individual Achievement Test-II, Word Reading: 58, Numerical Operations: 73.[3]  (Tr. 182.)

- On September 26, 2001, at the request of the State Agency, a mental disability evaluation was performed by James M. Lyall, Ph. D., ABN, FACPN.  (Tr. 396.)  Wechlser Adult Intelligence Scale-IV (WAIS-IV), Verbal: 63, Perceptual Reasoning: 63, Working Memory: 66, processing Speed: 59, Full Scale 57.  (Tr. 401.)  Dr. Lyall opined that Ware "did appear to lack energy during the testing situation and his overall IQ scores might be slightly higher, although even with full effort, a number of times during the testing session, he had difficulty doing many of the items.  We would estimate that his general intelligence still falls within the extremely low range."  (Tr. 399.)

Ware is correct that he has numerous scores of seventy or lower in his examinations, which if deemed valid, would satisfy a component of Listing 12.05(C).  Nonetheless, the ALJ invalidated all of Ware's scores explaining as follows:

> Finally, the "paragraph C" criteria of Listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Although the claimant has participated in IQ testing, three tests resulted in drastically different results.  The claimant's motivation and effort were questionable and I find that the results of testing were invalid for the reasons set forth below.
>
> ***
>
> The claimant attended a second consultative examination with James Lyall, Ph.D. after the hearing.  Dr. Lyall administered the Wechsler adult Intelligence Scale-Fourth Edition, the results showed a full-scale IQ score of 57, a processing speed index of 59, working memory index of 66, perceptual reasoning index of 63 and verbal comprehension index of 63.  Dr. Lyall questioned the reliability of the scores based on the claimant's lack of energy and less than full effort during

---

[3] The results of the first three tests are catalogued in an "Evaluation Team report" from Canton City Schools, and authored by school psychologist Richard Van Voorhis.  (Tr. 181-82.)

9

> testing. He estimated that the claimant's true scores would be higher, but still opined they would be in the extremely low range. (16F at 7, 9) I do not find these results valid based on the observed lack of full effort and no explanation for the significant drop since the abbreviated IQ scores years before. The vast discrepancies between all three IQ tests of record render them all questionable and invalid. One test was only the abbreviated version. The most recent was clearly for the basis of determining disability, and the claimant's motivation was questioned by the examiner. Dr. Lyall's hesitation to embrace the results coupled with the claimant's "alleged attempted overdose" described more fully below lead me to question his effort and the test results. Further, although the claimant has clearly struggled academically, his education records, ability to participate in the hearing and level of functioning described throughout the record are not consistent with the IQ scores in Dr. Lyall's report. Because Dr. Lyall's opinions are based on less than full effort and are not consistent with the record as a whole, I give his findings little weight.[4]

(Tr. 18-20.)

The Sixth Circuit has recently observed that an ALJ "may choose to disregard I.Q. scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation." *Dragon v. Comm'r of Soc. Sec.*, 470 Fed. App'x 454, 2012 U.S. App. LEXIS 6252 (6th Cir. Mar. 26, 2012); *citing Daniels v. Comm'r of Soc. Sec.*, 70 Fed. App'x 868 (6th Cir. 2003); *see also Shave v. Comm'r of Soc. Sec. Admin.*, 2013 U.S. Dist. LEXIS 50910 (N.D. Ohio Apr. 9, 2013) ("an ALJ may reject IQ scores that are contrary to substantial evidence.") (*citing Courter v. Comm'r of Soc. Sec.*, 479 Fed. App'x 713, 721-22 (6th Cir. 2012)). In *Courter*, the Court specifically noted that the claimant had extensive prior work history, that a doctor found that the claimant's IQ score of 59 underestimated her capabilities, and that "[n]one of the experts diagnosed the claimant with mental retardation." *Id*. The Sixth Circuit found that this evidence "was certainly substantial in that a reasonable mind would accept it as adequate to

---

[4] The Court omits the ALJ's recitation of the earlier IQ scores, as there is no corresponding analysis. (Tr. 19.)

support a finding that Claimant was not mentally retarded under Section 12.05B, 12.05C." *Id*.

Herein, the ALJ's analysis is inadequate. With respect to the most recent IQ examination performed by Dr. Lyall, the ALJ arguably overstates Dr. Lyall's reservations, as he merely noted that with greater energy Ware's scores "might be slightly higher," but still indicated that Ware's intelligence would fall in the extremely low range even with greater effort." (Tr. 399.) However, assuming *arguendo* that the ALJ's rejection of the 2011 IQ score was adequately explained and based on substantial evidence, the ALJ's basis for rejecting Ware's other IQ scores lacks substantial evidence. The only reason offered by the ALJ for rejecting Ware's three earlier test scores is their alleged "vast discrepancy." Among the first three IQ exams, Ware's lowest score was 58 and his highest score was 78. (Tr. 181, Exh. 14E.) Without some form of medical expert testimony, it is unclear why the ALJ believes this range of scores is unusually vast – so vast that it justifies invalidating all of the test scores.

The Sixth Circuit has cited the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") published by the American Psychiatric Association. *See, e.g.*, *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268 (6th Cir. 1991) (observing that the DSM distinguishes between four degrees of severity of intellectual impairment: mild, moderate, severe, and profound.) According to *Diagnostic & Statistical Manual of Mental Disorders*, §§ 31, V62.89 (American Psychiatric Association, 4th ed revised, 2000) ("DSM-IV-TR"), IQ scores of "50–55 to approximately 70" fall into the category of "mild mental retardation," while IQ scores of 71 to 84 correspond to the range of borderline intellectual functioning.[5] Furthermore, "[d]ifferential

---

[5] The recently revised *Diagnostic & Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM–V"), replaced the term "mental retardation" with "intellectual disability" and removed IQ scores from the diagnostic criteria, explaining "IQ test scores are approximations of

diagnosis between Borderline Intellectual Functioning and Mental Retardation (an IQ of 70 or below) is especially difficult when the coexistence of certain mental disorders ... is involved." *Id*. at 740. The DSM-IV-TR also notes that there is a five point measurement error in testing and, as such, an IQ score of 70 on a Wechsler test represents a range from 65 to 75. *Id*. at 41-42.

As the majority of Ware's scores fall in the category of "mild mental retardation," with only a few slightly higher in the borderline category (of which some fall within the margin of error), the ALJ's invalidation of the test scores on the grounds that they are wildly disparate is not supported by substantial evidence. It further bears noting that all three of Ware's earlier IQ exams yielded scores containing at least one qualifying score of 70 or lower. Pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D)(6)(c), "where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." Although the ALJ was not required to accept any of the scores as *per se* valid, the lack of sufficient reasoning for rejecting them renders the Decision unsupported by substantial evidence.[6] Since the ALJ's decision did not rest on a failure to meet Listing 12.05(C)'s other

---

conceptual functioning but may be insufficient to assess reasoning in real-life situations and mastery of practical tasks." *Id*. at 37. However, the Court continues to rely primarily on the earlier version (the DSM-IV-TR) given the regulations in effect at the relevant time, and the continued use of IQ scores in the Listings' criteria.

[6] Neither side points to a diagnosis of mental retardation, and such "[a] divergent diagnosis is certainly relevant evidence that can be considered when an ALJ assesses both (1) whether the diagnostic description is met and (2) whether an IQ score is valid." *Brooks v. Astrue*, 08-CV-2608, 2010 WL 1254323 (N.D. Ohio Mar. 24, 2010) (*citing Cooper v. Comm'r of Soc. Sec*., 217 F. App'x 450, 452 (6th Cir. 2007) ("it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05.") Nonetheless, the ALJ's decision does not cite a lack of a diagnosis as the basis for invalidation.

12

criteria, the above omission with respect to the IQ scores requires a remand. Ware's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial economy.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: February 12, 2014